TOWN OF IRVINGTON, A MUNICIPAL CORPORATION, AP-
PELLANT, v. JOSEPH C. HUHN AND CIVIL SERVICE
COMMISSION, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1963—Decided December 12, 1963.

Before Judges GOLDMANN, KILKENNY and COLLESTER.

*Mr. Samuel J. Zucker* argued the cause for appellant.

*Mr. Vincent P. Torppey* argued the cause for respondent Huhn (*Messrs. Bracken & Walsh,* attorneys).

*Miss Marilyn H. Loftus,* Deputy Attorney General, filed a statement in lieu of brief on behalf of respondent Civil Service Commission (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. The Town of Irvington appeals from the determination and order of the Civil Service Commission setting aside the action of the municipality in removing respondent Huhn from his position as Confidential Secretary and Clerk to the Director, Department of Public Works, and restoring him to his duties effective September 1, 1962, with back pay. The Commission held that the municipality had failed to comply with *N. J. S. A.* 11:26D–1 because (1) the letter notifying Huhn of the abolition of his position and his separation from service was sent by ordinary mail instead of having been served personally or by certified mail; (2) the notice was not served on the Civil Service Commission personally or by certified mail at least 45 days before the abolition became effective; and (3) the notice did not state the reasons for the abolition and separation from service.

Irvington was governed by a commission form of government prior to July 1, 1962. Huhn was appointed Confidential Secretary and Clerk to the then Director of the Department of Parks and Public Property on July 6, 1942, as evidenced by the letter of appointment from the Director to the Civil Service Commission. On July 18, 1942 the Commission approved the appointment in the exempt division of the classified service. See *R. S.* 11:22–26, since repealed by *L.* 1948, *c.* 121, § 11. However, Huhn's position continued in the exempt division of the classified service by virtue of *N. J. S. A.* 11:22–4.

Although the municipality challenged the validity of Huhn's appointment at the hearing before the Commission, it has expressly abandoned that contention here, both in its brief and on oral argument. It could hardly do otherwise. Like the Commission, we find that Huhn held his position by virtue of Ordinance No. 1634, adopted by the local governing body on August 28, 1945, as amended from time to time. Any question as to the validity of his appointment or tenure under Civil Service is adequately answered by the validating provisions of *L.* 1951, *c.* 279, § 1 (*N. J. S. A.* 11:21–4.1).

It is elementary that a position created by ordinance can only be abolished by ordinance. *Padavano v. North Bergen Twp.*, 13 *N. J. Super.* 6, 10 (*App. Div.* 1951). Counsel for Irvington points to no ordinance abolishing Huhn's position, except for the so-called Administrative Code of the Town of Irvington, adopted in July 1962 and mentioned below.

On May 21, 1958 Huhn was transferred under his same title, Confidential Secretary and Clerk to the Director, to the Department of Public Works. The transfer was approved by the Department of Civil Service on June 24 following.

On July 1, 1962 Irvington changed its form of government from the commission form to the so-called Mayor-Council Plan "D" under the Faulkner Act, *N. J. S. A* 40:69A-1 *et seq.* On July 16, 1962 Huhn received a notification letter from Mayor Lovell, dated June 12, 1962 (it is agreed that this was a mis-type and the date was July 12, 1962) and postmarked July 15, advising him that his position as Confidential Secretary and Clerk to the Director "has been abolished" and his services would be concluded as of September 1, 1962. Thereafter, Huhn's present counsel wrote the mayor on July 31 calling attention to the fact that no reason for abolishing the position had been given, that the Civil Service Commission had not been advised of the abolition of the position and the termination of Huhn's services, that the letter of notification was legally ineffective to remove Huhn, and that Huhn, being classified in the exempt class of the Civil Service, was entitled to a hearing before the Commission. A copy of the letter was sent to the Commission.

The Commission did not receive a copy of Mayor Lovell's July 12 letter to Huhn until August 1, 1962. On August 15 the Department of Civil Service wrote Mayor Lovell, copy to Huhn, informing him that the "lay-off" of Huhn had been recorded and his name placed on the exempt reemployment list for the position of Confidential Secretary and Clerk to the Director, effective September 1, 1962.

It is undisputed that the July 12, 1962 letter which the mayor sent Huhn did not comply with the controlling statute. *N. J. S. A.* 11:26D–1, in the three respects noted in the Commission's determination. It remains to be determined what effect may properly be given to these irregularities.

We recently considered *N. J. S. A.* 11:26D–1 in *Amodio v. Civil Service Commission*, 81 *N. J. Super.* 22 (1963). The issue there was whether under the statute the 45-day notice period commenced as of the date of mailing or as of the date of receipt of notice. We held that the period started running from the date written notice was sent by certified mail. However, we went on to say that the lay-off there involved would not be considered invalid even if the employee received only 43 days' notice, where he had been given 45 days' pay and suffered no prejudice from the loss of an additional two days' notice. The statute, we said, must be given a practical and reasonable construction.

■ The rationale of *Amodio* is equally applicable to this appeal. Huhn admits he actually received the notice 45 days before the date set for the termination of his services. Having received actual notice, he cannot argue that he was prejudiced because the letter was not sent by certified mail. *Cf. Griggs v. Princeton Borough*, 33 *N. J.* 207, 225 (1960) ; *Stahl v. Paterson Board of Finance*, 62 *N. J. Super.* 562, 588 (*Law Div.* 1960). Huhn had sufficient notice that his employment status was in jeopardy. We note that he was represented by counsel as early as July 31, 1962.

We perceive no prejudice to Huhn in the town's failure to notify the Commission within the time and in the manner provided by *N. J. S. A.* 11:26D–1. In *Amodio* we said that the main reason for this notice was so that the Chief Examiner and Secretary might promptly determine the employee's reemployment or demotional rights and notify him and the appointing authority of the determination. 81 *N. J. Super.*, at *page* 29. Huhn and the town received the reply of the Chief Examiner and Secretary within a day or two of August 15, at which time Huhn's reemployment status was

made known to him. Even had the notice to the Commission been served within the time and in the manner called for by the statute, Huhn could not have been assured of any earlier disposition.

Of course, the letter sent by the Department of Civil' Service to Huhn and the town on August 15 was not a determination that the action taken by the mayor was valid. The letter simply noted that Huhn's lay-off had been recorded. *N. J. S. A.* 11:26D–1 provides that upon receiving notice of lay-off or abolition of position, it shall be the duty of the Chief Examiner and Secretary to determine forthwith the re-employment or demotional rights of the employee concerned, and thereafter promptly to notify both the employee and the appointing authority of such determination. The language of the statute does not call upon or authorize the Chief Examiner and Secretary to adjudicate the merits of the municipal action taken. Such determination must await appeal by the employee.

The notice sent by Mayor Lovell to Huhn on July 12, 1962 must be held invalid and ineffective because it contained no reasons for the abolition of his position and the termination of his services. *N. J. S. A.* 11:26D–1 expressly requires that a person holding an office, position or employment in the classified service of the Civil Service of a municipality, and who is laid.off or separated from service "because of economy or otherwise, and not because of any delinquency or misconduct," must be given the reasons therefor. The same requirement obtains where the office or position is abolished. The purpose of the statutory requirement is obvious. Without being informed of the reasons for the abolition of his position or his separation from service, an employee would be severely hampered in seeking review of the municipal action. Moreover, the provision has the salutary effect of putting a municipality on notice that an employee protected by civil service may not be discharged for just any reason or on just any pretext. We consider the failure to notify Huhn .of the reasons for the alleged abolition of his position and the termination

of his services to be such a material noncompliance with the statute as to require his reinstatement.

█ In addition to the fatally defective notice there is the question of whether Huhn's position was in fact abolished. Here it may parenthetically be observed that we find entirely unpersuasive the argument, first raised by the municipality on this appeal, that the mayor's letter of notification really meant that Huhn was being laid off. The letter clearly stated that his position as Confidential Secretary and Clerk to the Director "has been abolished," and his services would be concluded as of September 1, 1962.

The argument advanced on behalf of Irvington that the position was abolished rests solely on the claim that the governing body, in adopting the Administrative Code under the new Mayor-Council Plan "D," failed to provide for a confidential secretary and clerk to the head of any department. We cannot adopt this argument of abolition by silence. The following provision of the Administrative Code speaks for itself:

"ARTICLE XII
TRANSITIONAL PROVISIONS

\*       \*       \*       \*       \*       \*       \*       \*

Sec. 12.2  TOWN OFFICERS AND EMPLOYEES

All Town Officers and Employees who are in the classified service of the Civil Service on July 1, 1962, and who are properly so classified are transferred to the appropriate department and division to which their respective functions, powers and duties are hereinafter transferred, and they shall not by such transfer be adversely affected in seniority, pension, demotion or salary rights, as provided by Revised Statutes Title 11 (*R. S.* 11:28–2)."

Section 12.5 of the Administrative Code transfers all the functions, powers and duties of the former "Department of Public Works, Office of Director & Administration," to the new Department of Public Works.

*R. S.* 11:28–2, appropriately referred to in section 12.2 of the Administrative Code just quoted, provides that:

"\*   \*   \*   when the form of government of any municipality shall have been or shall be changed, the officers and employees or persons

in the classified and unclassified service of any subdivision of the government of this state where the civil service laws are operating shall be continued in service and all rights enjoyed as to pensions, terms of service and salaries shall continue notwithstanding such transfer, combination or unification of governmental functions, or change of form of government."

The Faulkner Act itself protects the rights of municipal employees upon a changeover in government incident to the adoption of one of the optional plans under that act. *N. J. S. A.* 40:69A–207.

We conclude that the July 12, 1962 notice sent by the mayor to Huhn was ineffective under *N. J. S. A.* 11:26D–1 for failure to state the reasons for the action taken; that the record does not support the municipality's contention that Huhn's position was abolished; and that the purported abolition of his position and the termination of his services ran contrary to the protection given a municipal employee in the classified service under *R. S.* 11:28–2 and *N. J. S. A.* 40:69A–207, as well as the very provisions of Irvington's new Administrative Code, § 12.2. The determination and order under appeal is therefore affirmed.